UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| E. D. Rockey, | ) |
|     Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-CV-064-JD-SLC |
| | ) |
| KILOLO KIJAKAZI, Commissioner of Social Security | ) ) ) |
| | ) |
|     Defendant. | ) |

**OPINION AND ORDER**

E. Rockey applied for disability insurance benefits, alleging that she is unable to work primarily due to vision impairments, spina bifida occulta, carpal tunnel, arthritis, high blood pressure, incontinence, and nerve impairments. Ms. Rockey was found to be not disabled in a February 2020 decision. Ms. Rockey then filed this appeal, asking the Court to reverse the ALJ's decision and remand for further proceedings based on alleged errors with the residual functional capacity assessment. The Commissioner filed a response in opposition. Ms. Rockey then filed her reply. As explained below, the Court remands the Commissioner's decision.

**I.    Factual Background**

Until she stopped working, Ms. Rockey worked as an office clerk at a state park. (R. 190). Ms. Rockey suffers from degenerative changes in the cervical and lumbar spine (with history of an L3-4 laminoplasty in 2009), spina bifida occulta (with history of spinal cord detethering in 2009), history of spinal cord stimulator placement prior to the alleged onset date with subsequent removal surgery in 2019, obesity, bilateral carpal tunnel syndrome, and right eye blindness due to a coloboma. (R. 17). Ms. Rockey applied for benefits in 2018. She alleges disability starting April 20, 2018, and she meets the insured status requirements of the Social

1

Security Act through December 31, 2023. (R. 15, 17). The ALJ issued an unfavorable decision on February 12, 2020. In that decision, the ALJ made the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she can never climb ladders, ropes, or scaffolds and she can only occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl. She can also perform work requiring no more than occasional depth perception and frequent near visual acuity (but she can avoid ordinary hazards in the workplace, such as boxes on the floor and approaching people or vehicles) and she must avoid hazards, such as wet or slippery surfaces, unprotected heights, and dangerous moving machinery. She can further frequently handle and finger and she can tolerate frequent exposure to fumes, odors, dust, gases, and poorly ventilated areas.

(R. 21). Finding that Ms. Rockey can perform her past work as an office coordinator both as generally performed and as actually performed, the ALJ found that she is not disabled. The Appeals Council declined review, and Ms. Rockey filed this action seeking judicial review of the Commissioner's decision.

## II.     Standard of Review

Because the Appeals Council denied review, the Court evaluates the ALJ's decision as the final word of the Commissioner of Social Security. *Schomas v. Colvin*, 732 F.3d 702, 707 (7th Cir. 2013). This Court will affirm the Commissioner's findings of fact and denial of benefits if they are supported by substantial evidence. *Craft v. Astrue*, 539 F.3d 668, 673 (7th Cir. 2008). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971). This evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Even if "reasonable minds could differ" about the disability status of the claimant, the Court must affirm the Commissioner's decision as long as it is adequately supported. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

The ALJ has the duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and dispose of the case accordingly. *Perales*, 402 U.S. at 399–400. In evaluating the ALJ's decision, the Court considers the entire administrative record but does not reweigh evidence, resolve conflicts, decide questions of credibility, or substitute the Court's own judgment for that of the Commissioner. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Nevertheless, the Court conducts a "critical review of the evidence" before affirming the Commissioner's decision. *Id.* An ALJ must evaluate both the evidence favoring the claimant as well as the evidence favoring the claim's rejection and may not ignore an entire line of evidence that is contrary to his or her findings. *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). The ALJ must provide a "logical bridge" between the evidence and the conclusions. *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

### III. Standard for Disability

Disability benefits are available only to those individuals who can establish disability under the terms of the Social Security Act. *Estok v. Apfel*, 152 F.3d 636, 638 (7th Cir. 1998). Specifically, the claimant must be unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S. C. § 423(d)(1)(A). The Social Security regulations create a five-step process to determine whether the claimant qualifies as disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)–(v); 416.920(a)(4)(i)–(v). The steps are to be used in the following order:

1. Whether the claimant is currently engaged in substantial gainful activity;
2. Whether the claimant has a medically severe impairment;
3. Whether the claimant's impairment meets or equals one listed in the regulations;

    4. Whether the claimant can still perform past relevant work; and

    5. Whether the claimant can perform other work in the community.

*See Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001).

At step two, an impairment is severe if it significantly limits a claimant's ability to do basic work activities. 20 C.F.R. §§ 404.1522(a), 416.922(a). At step three, a claimant is deemed disabled if the ALJ determines that the claimant's impairment or combination of impairments meets or equals an impairment listed in the regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If not, the ALJ must then assess the claimant's residual functional capacity, which is defined as the most a person can do despite any physical and mental limitations that may affect what can be done in a work setting. 20 C.F.R. §§ 404.1545, 416.945. The ALJ uses the residual functional capacity to determine whether the claimant can perform his or her past work under step four and whether the claimant can perform other work in society at step five. 20 C.F.R. §§404.1520(e), 416.920(e). A claimant qualifies as disabled if he or she cannot perform such work. The claimant has the initial burden of proof at steps one through four, while the burden shifts to the Commissioner at step five to show that there are a significant number of jobs in the national economy that the claimant can perform. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004).

**IV.**    **Discussion**

Ms. Rockey offers four arguments in support of reversal. She argues that: the ALJ did not apply the correct standards in evaluating her RFC; the ALJ erred in evaluating her subjective symptoms; the ALJ failed to consider her impairments in combination; and the ALJ erred at step four and five by relying on VE testimony that is not consistent with the facts or supported by evidence. The Court only addresses Ms. Rockey's second argument because it agrees that the

ALJ erred in evaluating her subjective symptoms. The parties can address any remaining arguments on remand.

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his reasoning and it is supported by the record. The Court will not overturn an ALJ's subjective symptom analysis unless it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations omitted); *Curvin v. Colvin*, 778 F.3d 645, 651 (7th Cir. 2015). The claimant bears the burden of demonstrating that an ALJ's subjective symptom evaluation is patently wrong. *See Horr v. Berryhill*, 743 F. App'x 16, 19-20 (7th Cir. 2018). The regulations require the ALJ to look at a variety of factors in evaluating a claimant's symptoms, including the nature and intensity of pain, the effects of her pain on her ability to function, and daily activities. 20 C.F.R. § 404.1529(c).

The ALJ does not spend much time analyzing Ms. Rockey's subjective symptoms. The ALJ found that Ms. Rockey's ability to perform following daily activities support a finding that she is not as limited as she alleges: maintain her marriage, get her son up for school, drive, wash some dishes, shop for groceries (with assistance from either her husband or son), and care for her own personal needs. (A.R. 22). The ALJ then listed an entire paragraph of objective physical findings but discounted those findings because "there is no evidence in the record that she has exhibited any muscle atrophy or any significant deficits in grip strength or fine finger manipulative ability or that her muscle strength has been graded at worse than '4' out of '5.'" (A.R. 22). The ALJ also found that Ms. Rockey's symptoms were less severe than alleged because there is no evidence that she has received any surgeries, no evidence that she has used an assistive device for ambulation, and no evidence that she has experienced medication side effects that could not be managed. (A.R. 22). Finally, the ALJ found that Ms. Rockey's symptoms were

not as severe as alleged because despite "imaging study evidence of abnormalities in her cervical and lumbar spine, there is no documentation in the record that she has any stenosis in her cervical spine," and she only had mild foraminal recess narrowing and mild neuroforaminal narrowing in her lumbar spine. (A.R. 22).

Ms. Rockey asserts that the ALJ impermissibly relied on her daily activities in discrediting her subjective symptoms. The Seventh Circuit has cautioned that a person's ability to perform daily activities does not necessarily translate to an ability to work full-time, especially if the daily activities can only be done with significant limitations. See *Bjornson v. Astrue*, F.3d 640, 647 (7th Cir. 2012); *Punzio v. Astrue*, 630 F.3d 704, 712 (7th Cir. 2011); *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005). Daily activities are a proper factor for an ALJ to consider, though, and when those activities are not consistent with a claimant's testimony about his limitations, an ALJ can take that into account. *Pepper v. Colvin*, 712 F.3d 351, 368 (7th Cir. 2013).

The ALJ acknowledged that "the ability to perform daily activities is not necessarily consistent with the ability to perform full-time work." (A.R. 22). However, this statement alone does not automatically mean that the ALJ supported the analysis with substantial evidence. The ALJ erred by failing to explain how these daily activities contradicted Ms. Rockey's subjective symptoms, and therefore failed to build the requisite logical bridge between the evidence of daily activities and the conclusion that Ms. Rockey's subjective symptoms are not as severe as she alleges. The ALJ fails to explain how the ability to maintain her marriage or get her son up for school undermine the persuasiveness of her complaints of pain, vision impairments, or incontinence. If there is an explanation as to how her ability to maintain her marriage and wake up her son for school is inconsistent with complaints of pain and other subjective symptoms, the

ALJ should have provided one. There is also no evidence that her ability to "wash some dishes," shop with assistance, or care for her personal needs independently is inconsistent with her complaints of pain, as her ability to complete these tasks required further explanation and exploration.

The Seventh Circuit has explained that "the critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons … and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). While the ALJ acknowledged that Ms. Rockey needed assistance while grocery shopping from either her son or husband to push a cart or carry groceries, the ALJ failed to explain how her ability to grocery shop with assistance contradicted or undermined her complaints of pain and weakness. Ms. Rockey's need for assistance both with pushing the cart and carrying groceries support her subjective symptom statements that she struggles with lifting 7-8 pounds, and that her pain is worsened by lifting, bending, and walking. (A.R. 21-22). The ALJ erred in failing to explain how these daily activities undermined Ms. Rockey's subjective complaints.

Moreover, the ALJ's second paragraph regarding Ms. Rockey's subjective symptoms contradicts itself. The ALJ listed the following evidence that supports Ms. Rockey's subjective symptoms: braces for bilateral carpal tunnel syndrome; electrodiagnostic evidence of bilateral carpal tunnel syndrome; abnormal imaging studies that revealed degenerative changes in her cervical and lumbar spine and synovitis in her lumbar spine; an L5 nerve root block; strong medication prescriptions for her pain; and abnormal physical examination findings (including positive Tinel's and Phalen's signs in her hands, positive straight leg raises, decreased reflexes

and decreased sensation in her right lower extremity, and tenderness in her back, SI joints, and trochanteric bursae). (A.R. 22). The ALJ also noted that she underwent L3-4 laminoplasty, spinal cord dithering, and a spinal cord stimulator placement prior to the alleged onset date. (A.R. 22). Yet, despite listing a significant amount of evidence that supports Ms. Rockey's subjective symptoms, the ALJ relies on a lack of muscle atrophy, no significant decrease in muscle strength, and a lack of significant deficits in grip strength or fine finger manipulative ability. (A.R. 22). The ALJ seems to imply that muscle atrophy and significant deficits in muscle strength, grip strength, and fine finger manipulative ability are requirements for complaints of pain to be supported by the evidence. Yet the other evidence listed by the ALJ heavily supports Ms. Rockey's subjective symptoms. Her positive Tinel's and Phalen's signs, along with positive straight leg raises, decreased reflexes, and tenderness over multiple areas supports her complaints of pain. The ALJ even noted her nerve root block and pain medication, which further support her complaints of pain. The ALJ failed to explain how this substantial amount of evidence, which supports Ms. Rockey's claims, are undermined by a lack of significant deficits in muscle strength, muscle atrophy, or fine finger manipulative ability. The ALJ has given no evidence to support the idea that a lack of significant deficits in muscle strength, muscle atrophy, or fine finger manipulative ability is more indicative of Ms. Rockey's pain levels than the vast amount of evidence supporting her pain complaints. The ALJ has again failed to build the requisite logical bridge between the evidence presented and the conclusion that Ms. Rockey's symptoms are less severe than she alleges.

     Ms. Rockey also alleges that the ALJ erred in failing to consider her subjective complaints related to incontinence. The ALJ found Ms. Rockey's incontinence to be a non-severe impairment. (A.R. 19). The ALJ acknowledged that Ms. Rockey testified to having seven

or eight episodes of incontinence per day, but the ALJ found that the evidence did not support a severe impairment. (A.R. 19). The ALJ relied on evidence that showed she had "only minimal urethral hypermobility, just a grade 2 cystocele, and just a grade 1 apical prolapse." (A.R. 19). The ALJ also relied on evidence showing she had not undergone any surgeries or sought emergency room treatment for this impairment, that she reported medication helping the impairment, and that she was only experiencing mild suprapubic pain. (A.R. 19). The ALJ did not provide any limitations in the RFC related to Ms. Rockey's incontinence and did not explain why no such limitations were provided.

    Ms. Rockey indicated to her urologist in September 2018 that medication has improved her symptoms related to urgency, frequency, emptying. (A.R. 553). However, she stated that the medication seemed to "enhance her stress incontinence." (*Id*.) Ms. Rockey indicated that she was willing to accept the increased stress incontinence due to the improvement in her other symptoms. (*Id*). In November 2018, she denied bowel or bladder issues when she was seen for back and right lower extremity pain, but this visit was for spinal injections and was not related to her incontinence. (A.R. 578). In July 2019, Ms. Rockey reported to her urologist that although many of her symptoms had improved, she continues to suffer from incontinence without awareness. (A.R. 595). She stated that she has minimal to no hesitancy, no urgency or frequency, and markedly improved pelvic and perineal pain. (*Id.*) However, her incontinence without urgency or awareness remained. (*Id.*) She was encouraged to continue timed voiding every two to three hours while awake to relieve symptoms. (A.R. 596).

    While the ALJ is correct in finding that Ms. Rockey's pain, urine hesitancy, dysuria, and pelvic and perineal pain improved on medication, the ALJ fails to properly consider the symptoms that remained despite treatment. (A.R. 595). Ms. Rockey's urologist noted in July

2019 that she continued to suffer from mild suprapubic discomfort, and that her lower urinary tract symptoms wax and wane. (A.R. 595). The urologist also noted that she continues to have incontinence without awareness, and that she "does not have much in the way of urge related to incontinence." (A.R. 595). The treatment note indicates that "she can be sitting on the couch not doing any type of activity and suddenly be quite wet." (*Id.*) This is consistent with Ms. Rockey's testimony. She testified that her medication helps, but she continues to suffer from seven or eight episodes of incontinence without awareness in a day. (A.R. 43). Yet the ALJ dismissed Ms. Rockey's complaints and testimony regarding her incontinence without awareness because of improvements of other symptoms, like pain, frequency, and urgency. While the ALJ properly found that medication eased many of Ms. Rockey's symptoms related to her bladder impairment, she failed to explain why continued frequent episodes of incontinence without awareness did not warrant discussion or explanation, specifically with regard to the possible need for more frequent breaks during the workday. The treatment notes indicate that Ms. Rockey may require frequent bathroom breaks in order to avoid episodes of incontinence, but the ALJ has not explained why more breaks were not required in the RFC. (A.R. 553, 596).

      The ALJ has failed to explain why Ms. Rockey's complaints of incontinence were ignored in favor of evidence indicating that her pain and urine hesitancy had improved. There is no indication in the medical record that improved pain and less urine hesitancy means she would suffer from fewer episodes of incontinence than alleged. Without any analysis or discussion of whether Ms. Rockey's incontinence required limitations in the RFC, the Court cannot determine if the ALJ properly considered her continued incontinence. This error, combined with the other errors in analyzing Ms. Rockey's subjective symptoms, requires remand.

      The ALJ erred in relying in analyzing Ms. Rockey's subjective symptoms. On remand,

the ALJ must properly consider and analyze Ms. Rockey's subjective symptoms. Accordingly, the Court reverses and remands for additional proceedings. The parties are free to address any remaining issues on remand.

## CONCLUSION

For those reasons, the Court REVERSES the Commissioner's decision and REMANDS for additional proceedings consistent with this opinion. The Clerk is DIRECTED to prepare a judgment for the Court's approval.

SO ORDERED.

ENTERED: May 17, 2022

                                               /s/ JON E. DEGUILIO
                                               Chief Judge
                                               United States District Court